UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| -vs- | § | CRIMINAL NO.  5:17-CR-560 |
| | § | |
| HARSH JAGGI, | § | |
| | § | |
| Defendant. | § | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE***

Defendant Harsh Jaggi filed a Motion *in Limine* asking the Court to exclude several categories of evidence.  Doc. 280.  Each such category is discussed below.

A.  Sufficiency of the Government's Expert Notice

The Defendant moved to exclude the Government's proffered expert testimony on the basis that the Government failed to comply with Federal Rule of Criminal Procedure 16.

   1.  The Defendant's baseless motion should be denied because the Government's Notice was adequate.

The Defendant claimed - - without any legal support - - the Government's Notice of Intent to Offer Expert Testimony (Doc. 235) was insufficient under Rule 16 and therefore should be excluded.  The purpose of Rule 16 is "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."  Fed. R. Crim. P. 16 Advisory Committee Notes to 1993 Amendment.

On September 18, 2018, in addition to providing the qualifications of the Government's proposed expert, the Government provided the following details about its expert's proffered testimony:

1

>(1) money laundering generally; (2) TBML and BMPE money laundering schemes; (3) common conduct and motivation for the conduct of participants in TBML and BMPE money laundering schemes; (4) analysis of financial and other business records, recorded conversations, and other evidence in this case documenting the co-conspirators' pattern of transferring money and goods; (5) the resemblance of that pattern to a typical BMPE money laundering scheme; (6) the differences between that pattern and the operation of legitimate businesses; (7) the effect of that pattern on concealing or disguising from law enforcement the nature, location, source, ownership or control of illegal proceeds, including those from drug trafficking; and (8) the Bank Secrecy Act cash reporting requirements (i.e., Form 8300, Currency Transaction Report, and Currency and Monetary Instrument Report) generally, and, in particular, their significance in BMPE money laundering schemes, common reasons for cash-reporting failures, and the effect of cash-reporting failures on concealing or disguising from law enforcement the nature, location, source, ownership or control of illegal proceeds, including those from drug trafficking.

Doc. 235 at 2.

The summary of proffered testimony above provided the Defendant more than a "fair opportunity to test the merit of the expert's testimony through focused cross-examination," and the Defendant provided nothing to support a finding to the contrary.

2. <u>The Defendant's Motion should be denied because it included absolutely no legal or other support, in direct violation of the Local Rules.</u>

According to the Local Rules, "[a] Pretrial motion shall be in writing and state specifically the basis for the motion. The motion shall be supported by a statement of authority." CrLR12.2. Moreover, motions that do not comply with these rules are <u>waived</u>. *See* CrLR12.1. In support of his motion, the Defendant merely quoted the Government's Notice and baldly asserted it was insufficient. The Defendant provided absolutely no legal basis or even argument or explanation for his request, and, for that reason alone, his motion should be denied.

3. <u>The Defendant's Motion should be denied because he failed to "make serious and timely efforts to confer," in violation of this Court's Procedures.</u>

According to this Court's Procedures in Criminal Cases, "Counsel must make serious and timely efforts to confer with opposing counsel on all motions to try to reach agreements on the

2

relief to be requested by movant." Procedure 6A(1).  Here, the Government filed its Notice of Intent to Offer Expert Testimony (Doc. 235) on September 18, 2018 - - more than two months before the Defendant filed his motion claiming the Notice was so insufficient he "cannot adequately prepare for cross examination."  At no point during those two-plus months did the Defendant even suggest to Government counsel that the Notice was insufficient or ask for additional information about the Government's expert or his proffered testimony.

Instead, the Defendant waited until just over an hour before the motions deadline to even inform the Government that he planned to move to exclude the Government's expert testimony based on insufficient notice.  If the Government's notice was so insufficient, he was required to "make serious and timely efforts to confer" with Government counsel about that purported insufficiency.  Instead, the Defendant strategically waited until it was too late for the requisite "serious" effort to meaningfully confer, and his motion should be denied for that reason alone.

B.   The Substance of the Government's Proffered Expert Testimony

   1.   "Description of 'Schemes'"

The Defendant moved to exclude certain evidence he claimed - - again without any legal or other support - - "goes directly to the mental state of each defendant."  In particular, the Defendant moved to exclude the Government's proffered expert testimony about the (i) "effect" the coconspirators' conduct had "on conceal[ing] or disguis[ing the money] from law enforcement," and (ii) the "common reasons for cash-reporting failures."

None of that proffered testimony "goes directly to the mental state" of the Defendant, and all of it is permissible under Fifth Circuit law.  Testifying about the factual effect of someone's conduct is not the same as doing so about his intent or knowledge, and testimony about common reasons for taking certain action (or inaction) is not the same as testifying about the particular

3

reason the Defendant took a certain action (or inaction). Any connection between such proffered expert testimony and the Defendant's state of mind requires the jury to draw an inference, which is perfectly permissible under Fifth Circuit Law.

Indeed, Federal Rule of Evidence ("FRE") 702 "allows experts [even] to suggest an appropriate inference to be drawn from the facts in evidence if the expert's specialized knowledge is helpful in understanding the facts." *United States v. Willey*, 57 F.3d 1374, 1389 (5th Cir. 1995) (emphasis added).[1] Accordingly, none of the Government's proffered expert testimony impermissibly speaks to the Defendant's state of mind under Fifth Circuit law, and the Defendant's motion should be denied.

2. "Purposes and 'Use' of Statutes"

The Defendant seeks to exclude expert testimony about "the purpose" of the cash reporting requirements and how the information gathered therefrom is "used by law enforcement

---

[1] *See also United States v. Wilson*, 355 F.3d 358, 362 (5th Cir. 2003) (permitting expert witness to suggest appropriate inferences from facts in evidence because the average juror may not be aware of their significance); *United States v. Dotson*, 817 F.2d 1127, 1132 (5th Cir. 1987) (Fifth Circuit upheld an expert's answer even to the question "What other items have you noted in the evidence [] that indicate an intent willfully to evade income taxes?", in part because "the responses of the expert were also focused on the evidence, rather than addressing the ultimate issue forbidden by rule 704."); *United States v. $9,041,598.68,* 163 F.3d 238, 255 (5th Cir. 1999) (Fifth Circuit permitted expert testimony that the a defendant's conduct "was consistent with money laundering," at least as long as the expert's "trial testimony included the bases for the expert's conclusion, and the conclusion was supported by the overwhelming evidence"); *United States v. Velez*, No. 93-2417, 11994 WL 242804, at *1 (5th Cir. May 18, 1994) (in an unpublished decision, the Fifth Circuit upheld testimony that the expert "believed '[the defendant] was actively assisting in the laundering of money,'" in part because "the expert was only asked whether Velez appeared to be an active participant, a fact from which the jury could infer knowledge or intent but which is not itself an ultimate conclusion about the defendant's mental state."); *See also United States v. Thomas*, 847 F.3d 193, 205 (5th Cir. 2017) (Fifth Circuit found the expert testimony did not impermissibly concern "state of mind with respect to [] structuring . . . . [when expert] testified about Thomas's unusual transaction history, specifically regarding Thomas's multiple cash transactions that were just under $10,000."); *but see United States v. Sosa*, 897 F.3d 615, 619 (5th Cir. 2018) (although the expert "began with acceptable testimony describing the typical roles within a drug trafficking organization," the expert then impermissibly "began matching those roles to [defendants] in the case.").

to investigate crimes." An expert may offer an opinion "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Accordingly, the Government intends to elicit some basic background information concerning the Form 8300 and Currency Transaction Report cash reporting obligations. The Government expects that many, if not most, of the jurors (particularly those who have never operated cash-intensive businesses) will not be familiar with those cash reporting requirements. Such testimony will be essential to give the jury some context from which to evaluate the evidence in this case - - including the Defendant's own exhibits, which include 108 Form 8300s and hundreds more Currency Transaction Reports. *See* Doc. 258.

In addition, consistent with Fifth Circuit law, the Government intends to elicit testimony about the "purpose" of the cash reporting requirements - - as it relates to law enforcement's use of the information required to be disclosed in investigations of financial crime. In *United States v. Wilson*, the Fifth Circuit upheld very similar opinion testimony concerning Currency Transaction Reports. *See* 355 F.3d at 362. In *Wilson*, an IRS Special Agent "testified that the purpose of Currency Transaction Reporting ('CTR') requirements is to track the movement of large amounts of currency because such amounts are often related to some type of illegal activity" (that expert even "opined that a CTR should have been filled out in this case when [the defendant] used multiple small transactions to transact more than $10,000 worth of currency in one day)." *Id*. Emphasis added. Accordingly, as in *Wilson*, the Government's proffered expert testimony is acceptable under Fifth Circuit law, and the Defendant's motion should be denied.

C.  "Resume Information"

The Defendant appears to ask the Court to exclude evidence of certain qualifications of the Government's expert. The Government does not intend to elicit any information not directly

relevant to the witness's qualifications as an expert in this case. If all Defendants stipulate to the witness's expertise as provided in the Notice and he is certified by the Court as an expert in those areas, the Government is willing to elicit at trial nothing more than he has been an IRS Special Agent for 20 years.

D. "Extraneous Acts"

The Defendant moved to exclude unidentified "extraneous acts," pointing out that "[t]he Government has not provided notice of any item of proposed evidence pursuant to Rule 404(b)." The Government did file Rule 404(b) Notices under seal on June 29, 2018, after which all counsel of record received four ECF email notifications concerning a "Sealed Event" filing. None of the counsel for the Defendants contacted the Government about the filing, and undersigned Government counsel misunderstood that such "Sealed Event[s]" are not accessible for anyone on PACER in this District and that the local practice was for the filer to email a copy of the filing to all counsel. The Government emailed defense counsel the 404(b) Notices on Tuesday, December 4, 2018. Accordingly, the Government is not opposed to a motion by any Defendant for leave to file a motion concerning the Government's 404(b) Notices.

E. Defendant's Characterization of "Prejudicial and Unnecessary Information"

1. "Characterization of Alleged Schemes"

The Defendant moved to exclude any "mention" of the terms "Trade Based Money Laundering" and "Black Market Peso Exchange." Without offering any legal or factual support whatsoever,[2] the Defendant baldly asserted that "[s]uch characterizations are inventions of the Government, and serve no purpose but to inflame the jury."

---

[2] Again, for this reason alone, the Defendant violated the Local Rules, and this request should be denied.

To the contrary, just as the term "money laundering," these terms are commonly used in legal treatises and other academic literature, and by experts in courts to describe a particular type of money laundering—the type of money laundering at issue in this case. *See, e.g.*, *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006) ("Columbian-operated brokerage houses on the Black Market Peso Exchange"); *United States v. Fares*, 95 F. App'x 379, 382 (2d Cir. 2004) ("All of these activities were consistent with the practices of an international money laundering scheme used by Columbian narcotics traffickers known as the 'Black Market Peso Exchange.'"); *United States v. Approximately $620,349.85*, No. 13-CV-3966 RJD SMG, 2015 WL 3604044, at *1 n.2 (E.D.N.Y. June 5, 2015) (explaining how a Black Market Peso Exchange works).

The Government's purpose in referencing "Trade Based Money Laundering" and "Black Market Peso Exchange" is simply to assist the jury in understanding the alleged conspiracy in this case and in determining whether the evidence indicates the Defendant participated in it. In addition, particularly because the term "Black Market Peso Exchange" (which, rather than "Trade-Based Money Laundering," will be the focus of the Government's expert testimony) literally refers to currency exchange, rather than money laundering, the term itself (as opposed to the money laundering scheme the term represents) is much less prejudicial than the term "money laundering," which is more than acceptable in the Fifth Circuit and elsewhere.

2. "Name of Investigation"

The Government has no intention of referencing the internal name of its investigation.

3. "Title of Government Offices"

Unless one or more Defendants somehow "open the door" at trial, the Government does not intend to reference the name of the section in which two of the prosecutors work; instead, the Government intends to address those prosecutors as something to the effect of "D.O.J. Trial

Attorneys." Nevertheless, the Government opposes the Defendant's baseless request for a Court Order prohibiting any reference to the particular section for which two of the Government's prosecutors work.

    4. <u>Evidence of Knowledge of the Prosecutions of Virender Sharma and Vikram Datta</u>

Based merely on a vague reference to FRE 401, 402, and 802, the Defendant seeks to exclude evidence concerning his knowledge of the prosecutions of Virender Sharma and Vikram Datta, who both also owned and operated wholesale perfume businesses in downtown Laredo. The evidence of such knowledge stems from a post-arrest interview during which the Defendant admitted to being aware generally about the legal trouble of Virender Sharma and Vikram Datta related to laundering drug money, and acknowledged reading and keeping in his store an article about the money laundering prosecution of Datta.

First, concerning FRE 802, such evidence merely of <u>knowledge</u> (*i.*e., effect on the listener) of those prosecutions will not be offered for the truth that the prosecution occurred, and thus would not constitute hearsay. As for relevance, the Defendant's knowledge that payments consisting of drug money had been laundered through his competitor downtown Laredo perfume stores is probative of the Defendant's knowledge that payments to his own store also may have come from the sale of illegal drugs.

In addition, such evidence also could support a deliberate ignorance theory. A deliberate ignorance instruction is proper if evidence supports inferences that "(1) the defendants were subjectively aware of a high probability of the existence of illegal conduct, or (2) the defendant purposefully contrived to avoid learning of the illegal conduct." *United States v. Brown*, 553 F.3d 768, 797-98 (5th Cir. 2008). In *Brown*, the Fifth Circuit found the fact that a pharmacist accused of filling false prescriptions possessed a Texas Pharmacy Laws and Regulations manual

detailing circumstances when prescriptions should be considered suspicious was relevant to the pharmacist's knowledge of such or at least to deliberate ignorance. *Id.* at 790. Just as the Fifth Circuit found regarding the manual in *Brown,* the article concerning the Datta money laundering prosecution also is relevant to the Defendant's knowledge and/or deliberate ignorance, either of which is relevant to prove money laundering.

F.    Closing of an El Reino Bank Account

Based on FRE 402, 403, 802, and 901, the Defendant moved the Court to exclude any reference to his and coconspirator Neeru Jaggi's El Reino bank account being closed. The Government has offered as an exhibit a recording (and corresponding transcript) of a conversation during which the Defendant admitted that the El Reino bank account was closed because of repeated illegally "structured" cash deposits just under the $10,000 cash reporting threshold.[3] As for the Defendant's Rule 802 and 901 objections, because the statement "was made by [a] coconspirator during and in furtherance of the conspiracy," it is not hearsay under FRE 801(d)(2)(E), and the statement will be authenticated at trial.

As for the Defendant's unsupported FRE 402/403 claim, evidence is relevant if: "(a) it has *any* tendency to make a fact more or less *probable* than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). Here, the Indictment includes money laundering charges based in part on knowledge that a transaction was designed "to avoid a transaction reporting requirement under State or Federal law," as prohibited by Title 18, United States Code, Section 1956 (a)(1)(B)(ii). To show the Defendant's knowledge of this design, the Government intends to offer evidence that (i) the Defendant and coconspirator Defendant Neeru Jaggi gave their El Reino business bank account

---

[3] Govt. Exh. 314A-(S1) at 10.

number to at least one of their customers so they could make cash deposit payments, (ii) subsequently there were repeated "structured" deposits on behalf of that customer that were designed to avoid the Currency Transaction Report cash reporting statute, (iii) next, according to the Defendant, the bank closed his account because of those illegal "structured" deposits, (iv) the Defendant and coconspirator Defendant Neeru Jaggi then opened another account at a different bank and gave the new account number to the same customer, and, finally, (v) there were similarly "structured" deposits on behalf of that customer into the new El Reino bank account that again were designed to avoid the Currency Transaction Report cash reporting statute.

Accordingly, the closing of the first bank account, particularly because the evidence indicates the Defendant knew it was closed because the deposit transactions into it had been designed to avoid the Currency Transaction Report cash reporting statute, is relevant to (and significantly probative of) his knowledge that the deposit transactions on behalf of the same customer into his account at the second bank also would be designed to avoid the Currency Transaction Report cash reporting statute. Finally, although certainly prejudicial to the Defendant, there is no support for a finding of unfairness.[4]

G.   Conclusion

For the foregoing reasons, the Court should deny the Defendant's Motion *in Limine*.

Respectfully,

RYAN K. PATRICK
UNITED STATES ATTORNEY

---

[4] *See Dollar v. Long Mfg., N. C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) (quoting *Old Chief v. United States*, 519 U.S. 172, 193 (1997)) ("'Unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'").

/s/ José Angel Moreno
José Angel Moreno
Assistant United States Attorney


Deborah Connor
Chief
Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice


/s/ Keith Liddle
Keith Liddle
Trial Attorney
Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2018, a true and correct copy of Response to the Defendant's Motion *in Limine* was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to all Counsel of Record.

/s/ Keith Liddle
Keith Liddle
Trial Attorney
Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice