UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff, | § § | |
| -vs- | § § | CRIMINAL NO.  5:17-CR-560 |
| LUIS MONTES-PATINO, | § § § | |
| Defendant. | § | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE*** 

Defendant Montes-Patino filed a Motion *in Limine* asking the Court to exclude several categories of evidence.  Doc. 293.  Each such category is discussed below.

A.   Use of the Term "Drug Proceeds"

Based on only vague references to the "Confrontation Clause" and Federal Rule of Evidence (FRE) 403, the Defendant moved the Court to exclude any reference to the term "drug proceeds."  Doc. 293 at 1.  Apparently the Defendant simply chose to ignore the allegations in the Indictment to that very term, "drug proceeds."  Indeed, Title 18, United States Code, Section 1956 requires proceeds of any "specified unlawful activity," and the Indictment makes clear that the allegations in this case focus primarily on such proceeds from drug trafficking.

Accordingly, to meet its burden, the Government will have to elicit testimony of earnings from illegal drug trafficking, whether or not the precise term "drug proceeds" is used, which the Government intends to do from at least three witnesses convicted of drug trafficking and from the Government's expert.  In addition, as the knowledge element typically must be proven circumstantially,[1] the Government intends to offer circumstantial evidence that the cash the

---

[1] *See United States v. Santos*, 553 U.S. 507, 521 (2008).

1

coconspirators transacted was generated from drug trafficking. That evidence includes, but is not limited to, evidence that certain coconspirators believed the cash represented proceeds from drug trafficking (whether or not they use the term "drug proceeds"). Because such evidence will be offered via a testifying witness (and thus will not involve an out-of-court statement), or will involve a statement by a coconspirator in furtherance of and during the conspiracy, it will not constitute hearsay under FRE 801.

B.  Use of the Terms "'Trade Based Money Laundering' and/or 'Black Market Peso Exchange'"

This section in Defendant's motion has nothing to do with the terms "Trade Based Money Laundering" or "Black Market Peso Exchange" (as the heading suggests), and provides no argument as to why these accurate descriptions should be excluded. Instead, it appears to be a word-for-word repetition of the language in the preceding paragraph of Defendant's motion.

C.  Sufficiency of the Government's Expert Notice

The Defendant moved to exclude the Government's proffered expert testimony on the basis that the Government failed to comply with Federal Rule of Criminal Procedure 16.

1.  The Defendant's baseless motion should be denied because the Government's Notice was adequate.

The Defendant claimed - - without any legal support - - the Government's Notice of Intent to Offer Expert Testimony (Doc. No. 235) was insufficient under Rule 16 and therefore should be excluded. The purpose of Rule 16 is "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 Advisory Committee Notes to 1993 Amendment.

On September 18, 2018, in addition to providing the qualifications of the Government's proposed expert, the Government provided the following details about its expert's proffered testimony:

> (1) money laundering generally; (2) TBML and BMPE money laundering schemes; (3) common conduct and motivation for the conduct of participants in TBML and BMPE money laundering schemes; (4) analysis of financial and other business records, recorded conversations, and other evidence in this case documenting the co-conspirators' pattern of transferring money and goods; (5) the resemblance of that pattern to a typical BMPE money laundering scheme; (6) the differences between that pattern and the operation of legitimate businesses; (7) the effect of that pattern on concealing or disguising from law enforcement the nature, location, source, ownership or control of illegal proceeds, including those from drug trafficking; and (8) the Bank Secrecy Act cash reporting requirements (i.e., Form 8300, Currency Transaction Report, and Currency and Monetary Instrument Report) generally, and, in particular, their significance in BMPE money laundering schemes, common reasons for cash-reporting failures, and the effect of cash-reporting failures on concealing or disguising from law enforcement the nature, location, source, ownership or control of illegal proceeds, including those from drug trafficking.

Doc. No. 235 at 2.

The summary of proffered testimony above provided the Defendant more than a "fair opportunity to test the merit of the expert's testimony through focused cross-examination," and the Defendant provided nothing to support a finding to the contrary. The expert's qualifications and the Government's disclosure noted above provide the necessary roadmap to the Defendant. If that was not clear to the Defendant, the Defendant has a duty to meet and confer as discussed below in Section 2.

  2. <u>The Defendant's Motion should be denied because he failed to "make serious and timely efforts to confer," in violation of this Court's Procedures.</u>

According to this Court's Procedures in Criminal Cases, "Counsel must make serious and timely efforts to confer with opposing counsel on all motions to try to reach agreements on the relief to be requested by movant." Procedure 6A(1). Here, the Government filed its Notice of

Intent to Offer Expert Testimony (Doc. No. 235) on September 18, 2018 - - more than two months before the Defendant filed his motion claiming the Notice was so insufficient he "cannot adequately prepare for cross examination." At no point during those two-plus months did the Defendant even suggest to Government counsel that the Notice was insufficient or ask for additional information about the Government's expert or his proffered testimony.

Instead, the Defendant waited until less than an hour before the motions deadline to even inform the Government that he planned to move to exclude the Government's expert testimony based on insufficient notice. If the Government's notice was so insufficient, the Defendant was required to "make serious and timely efforts to confer" with Government counsel about that purported insufficiency. Instead, the Defendant strategically waited until it was too late for any "serious" effort to meaningfully confer, and his motion should be denied for that reason alone.

D.   Substance of the Government's Proffered Expert Testimony

   1.   "Description of 'Schemes'"

The Defendant moved to exclude certain evidence he claimed - - again without any legal or other support - - "goes directly to the mental state of each defendant." Doc. 293 at 3. In particular, the Defendant seeks to exclude the Government's proffered expert testimony about the (i) "effect" the coconspirators' conduct had "on conceal[ing] or disguis[ing the money] from law enforcement," and (ii) the "common reasons for cash-reporting failures."

None of that proffered testimony "goes directly to the mental state" of the Defendant, and all of it is permissible under Fifth Circuit law. Testifying about the factual _effect_ of someone's conduct is not the same as doing so about his intent or knowledge, and testimony about _common_ reasons for taking certain action (or inaction) is not the same as testifying about the _particular_ reason the _Defendant_ took a certain action (or inaction). Any connection between such proffered

expert testimony and the Defendant's state of mind requires the <u>jury</u> to draw an inference, which is perfectly permissible under Fifth Circuit Law.

Indeed, FRE 702 "allows experts [even] to <u>suggest</u> an appropriate inference to be drawn from the facts in evidence if the expert's specialized knowledge is helpful in understanding the facts." *United States v. Willey*, 57 F.3d 1374, 1389 (5th Cir. 1995) (emphasis added).[2] Accordingly, none of the Government's proffered expert testimony impermissibly speaks to the Defendant's state of mind under Fifth Circuit law, and the Defendant's motion should be denied.

2. "<u>Purposes and 'Use' of Statutes</u>"

The Defendant seeks to exclude expert testimony about "the purpose" of the cash reporting requirements and how the information gathered therefrom is "used by law enforcement to investigate crimes." Doc. 293 at 4. An expert may offer an opinion "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to

---

[2] *See also United States v. Wilson*, 355 F.3d 358, 362 (5th Cir. 2003) (permitting expert witness to suggest appropriate inferences from facts in evidence because the average juror may not be aware of their significance); *United States v. Dotson*, 817 F.2d 1127, 1132 (5th Cir. 1987) (Fifth Circuit upheld an expert's answer even to the question "What other items have you noted in the evidence [] that indicate an intent willfully to evade income taxes?", in part because "the responses of the expert were also focused on the evidence, rather than addressing the ultimate issue forbidden by rule 704."); *United States v. $9,041,598.68,* 163 F.3d 238, 255 (5th Cir. 1999) (Fifth Circuit permitted expert testimony that the a defendant's conduct "was consistent with money laundering," at least as long as the expert's "trial testimony included the bases for the expert's conclusion, and the conclusion was supported by the overwhelming evidence"); *United States v. Velez*, No. 93-2417, 11994 WL 242804, at *1 (5th Cir. May 18, 1994) (in an unpublished decision, the Fifth Circuit upheld testimony that the expert "believed '[the defendant] was actively assisting in the laundering of money,'" in part because "the expert was only asked whether Velez appeared to be an active participant, a fact from which the jury could infer knowledge or intent but which is not itself an ultimate conclusion about the defendant's mental state."); *See also United States v. Thomas*, 847 F.3d 193, 205 (5th Cir. 2017) (Fifth Circuit found the expert testimony did not impermissibly concern "state of mind with respect to [] structuring . . . . [when expert] testified about Thomas's unusual transaction history, specifically regarding Thomas's multiple cash transactions that were just under $10,000."); *but see United States v. Sosa*, 897 F.3d 615, 619 (5th Cir. 2018) (although the expert "began with acceptable testimony describing the typical roles within a drug trafficking organization," the expert then impermissibly "began matching those roles to [defendants] in the case.").

determine a fact in issue." Fed. R. Evid. 702. Accordingly, the Government intends to elicit some basic background information concerning the Form 8300 and Currency Transaction Report cash reporting obligations. The Government expects that many, if not most, of the jurors (particularly those who have never operated cash-intensive businesses) will not be familiar with those cash reporting requirements. Such testimony will be essential to give the jury some context from which to evaluate the evidence in this case.

In addition, consistent with Fifth Circuit law, the Government intends to elicit testimony about the "purpose" of the cash reporting requirements - - as it relates to law enforcement's use of the information required to be disclosed in investigations of financial crime. In *United States v. Wilson*, the Fifth Circuit upheld very similar opinion testimony concerning Currency Transaction Reports. *See* 355 F.3d at 362. In *Wilson*, an IRS Special Agent "testified that the <u>purpose</u> of Currency Transaction Reporting ('CTR') requirements is to track the movement of large amounts of currency because such amounts are often related to some type of illegal activity" (that expert even "opined that a CTR should have been filled out in this case when [the defendant] used multiple small transactions to transact more than $10,000 worth of currency in one day"). *Id*. Emphasis added. Accordingly, as in *Wilson*, the Government's proffered expert testimony is acceptable under Fifth Circuit law and the Defendant's motion should be denied.

    3. "<u>Resume Information</u>"

The Defendant appears to ask the Court to exclude evidence of certain qualifications of the Government's expert. Doc. 293 at 5. The Government does not intend to elicit any information not directly relevant to the witness's qualifications as an expert in this case. If all Defendants stipulate to the witness's expertise as provided in the Notice and he is certified by

the Court as an expert in those areas, the Government is willing to elicit at trial nothing more than he has been an IRS Special Agent for 20 years.

E.   Defendant's Characterization of Purported "Prejudicial and Unnecessary Information"

   1.  "Characterization of Alleged Schemes"

The Defendant moved to exclude any "mention" of the terms "Trade Based Money Laundering" and "Black Market Peso Exchange." Doc. 293 at 6. Without offering any legal or factual support whatsoever,[3] the Defendant baldly asserted that "[s]uch characterizations are inventions of the Government, and serve no purpose but to inflame and prejudice the jury." Id.

To the contrary, just as the term "money laundering," these terms are commonly used in legal treatises and other academic literature, and by experts in courts to identify and describe a particular type of money laundering—the type of money laundering at issue in this case. *See, e.g.*, *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006) ("Columbian-operated brokerage houses on the Black Market Peso Exchange"); *United States v. Fares*, 95 F. App'x 379, 382 (2d Cir. 2004) ("All of these activities were consistent with the practices of an international money laundering scheme used by Columbian narcotics traffickers known as the 'Black Market Peso Exchange.'"); *United States v. Approximately $620,349.85*, No. 13-CV-3966 RJD SMG, 2015 WL 3604044, at *1 n.2 (E.D.N.Y. June 5, 2015) (explaining how a Black Market Peso Exchange works).

The Government's purpose in referencing "Trade Based Money Laundering" and "Black Market Peso Exchange" is to assist the jury in understanding the alleged conspiracy in this case and in determining whether the evidence indicates the Defendant participated in it. In addition, particularly because the term "Black Market Peso Exchange" (which, rather than "Trade-Based

---

[3] Again, for this reason alone, the Defendant violated the Local Rules and this request should be denied.

Money Laundering," will be the focus of the Government's expert testimony) literally refers to currency exchange, rather than money laundering, the term itself (as opposed to the money laundering scheme the term represents) is even less prejudicial than the term "money laundering," which is more than acceptable in the Fifth Circuit and elsewhere.

2. "Name of Investigation"

The Government has no intention of referencing the internal name of its investigation. *See* Doc. 293 at 6.

3. "Title of Government Offices"

Unless one or more Defendants somehow "open the door" at trial, the Government does not intend to reference the name of the section in which two of the prosecutors work; instead, the Government intends to address those prosecutors as something to the effect of "D.O.J. Trial Attorneys." Nevertheless, the Government opposes the Defendant's baseless request for a Court Order prohibiting any reference to the particular section for which two of the Government's prosecutors work.

4. Evidence of Knowledge of the Prosecutions of Virender Sharma and Vikram Datta

Based merely on a vague reference to Federal Rules of Evidence 401, 402, and 802, the Defendant seeks to exclude evidence concerning his knowledge of the prosecutions of Virender Sharma and Vikram Datta, who both also owned and operated wholesale perfume businesses in downtown Laredo. The evidence of such knowledge stems from a post-arrest interview during which Defendants Neeru Jaggi and Harsh Jaggi admitted to being aware generally that the legal trouble of Virender Sharma and Vikram Datta related to laundering drug money through their respective perfume businesses, and Harsh Jaggi acknowledged reading and keeping in their store an article about the money laundering prosecution of Datta. These statements will be admissible

only against Defendants Neeru Jaggi and Harsh Jaggi, and the Government does not oppose a limiting instruction, if appropriate, that the evidence is only admissible as to those defendants

5. "Prior Bad Acts"

The Defendant moved to exclude unidentified "prior bad acts," pointing out that the Government had not provided Rule 404(b) notice. Doc. 293 at 7. The Government did file Rule 404(b) Notices under seal on June 29, 2018, after which all counsel of record received four ECF email notifications concerning a "Sealed Event" filing. None of the counsel for the Defendants contacted the Government about the filing, and undersigned Government counsel misunderstood that such "Sealed Event[s]" are not accessible for anyone on PACER in this District and that the local practice was for the filer to email a copy of the filing to all counsel. The Government emailed defense counsel the 404(b) Notices on Tuesday, December 4, 2018. Accordingly, the Government is not opposed to a motion by any Defendant for leave to file a motion concerning the Government's 404(b) Notices.

F. Conclusion

For the foregoing reasons, the Court should deny the Defendant's Motion *in Limine*.

Respectfully,


RYAN K. PATRICK
UNITED STATES ATTORNEY


/s/ José Angel Moreno
José Angel Moreno
Assistant United States Attorney

9

Deborah Connor
Chief
Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice


/s/ Keith Liddle
Keith Liddle
Trial Attorney
Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2018, a true and correct copy of Response to the Defendant's Motion *in Limine* was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to all Counsel of Record.

/s/ Keith Liddle
Keith Liddle
Trial Attorney
Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice